*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In re                         )     Case No.  17-25114-E-7
                             )     Docket Control No.  DNL-10
HSIN-SHAWN CYNDI SHENG,      )
                             )
           Debtor.         )
_____ )

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

## MEMORANDUM OPINION AND DECISION

Russell Cunningham and his firm Desmond, Nolan, Livaich & Cunningham, ("Trustee Counsel") the attorney for Eric Nims, the Chapter 7 Trustee ("Client" or "Trustee") in this bankruptcy case, makes a First and Final Request for the Allowance of Fees and Expenses in this case.[1]

Fees are requested for the period October 30, 2017, through June 17, 2019.  The order of the court approving employment of Trustee Counsel was entered on November 3, 2017. Dckt. 55.  Trustee Counsel requests fees in the amount of $28,000.00 and costs in the amount of $1,794.13.[2]

Because of other continued matters in this case set for hearing, counsel identifies an additional four hours of time expended, at the hourly billing rate of $425.00.  Counsel requests

---

[1] This Motion was filed pursuant to Local Bankruptcy Rule 9014-1(f)(2).  Debtor stated an opposition at the initial hearing and the court set a briefing schedule and for the final hearing to be conducted on August 21, 2019.  This is a core matter proceeding for which the bankruptcy judge issues the final order.  11 U.S.C. § 330, 28 U.S.C. § 157(b), and the reference to this bankruptcy court by the District Court for the Eastern District of California.

[2] Trustee Counsel previously sought a reduced fee of $25,205.87 and costs in the amount of $1,794.13 at the prior hearing, proposing to give the Debtor in this surplus case a modest discount. Given the Opposition of the Debtor, Trustee Counsel now requests the full $28,000.00, being no longer willing to give Debtor a discount on the fees. Dckt. 240.

payment of an additional one-half of those fees, $850.00 for two hours, as part of this application and will write down the other two hours to $0 for purposes of this Application. The four hours of time for the continued hearings is documented by counsel's presence in open court and his participation in those matters.[3]

**July 11, 2019 Hearing**

At the July 11, 2019 hearing, the court set a briefing schedule at the request of Debtor and continued the hearing. Dckts. 209, 214. Debtor's counsel argued that due to the extreme emotional distress caused by Trustee Counsel in representing the Trustee, Debtor advocated for Trustee Counsel to be paid nothing.

---

[3] As shown in the discussion below, the court concludes that the Debtor has made legally and factually unsupported assertions, which assertions are merely repeated by her counsel without any legal or factual authority given by him for the oppositions and relief sought by and for Debtor. At the August 21, 2019 hearing Trustee Counsel stated that they were no longer willing to give the Debtor a discount on the fees and were demanding to be paid the full amount.

Debtor's counsel then began a convoluted discussion, first asserting that the Trustee counsel not being willing to voluntarily discounting its fees was the equivalent to the imposition of a penalty in the nature of how if one contests a traffic ticket and loses, the fine is greater than if the person had just paid the traffic ticket without contesting it. Debtor counsel could offer no explanation as to how a previously proposed discount, which was withdrawn, is the same as a criminal penalty imposed by law.

Debtor's counsel then argued that "technically," the Motion for Compensation has been brought by the Trustee for fees to be allowed to Trustee Counsel, so it was legally impossible for Trustee Counsel to advise the court that Trustee Counsel cannot change the Motion, which Trustee Counsel prepared, filed, and is currently advocating for the Trustee. Debtor's counsel could offer no legal basis for contending that the attorney of record for the Trustee could not represent, advocate, and modify the positions being taken by his client.

Out of an abundance of caution, the court questioned the Trustee whether he too withdrew any previous offer to have his counsel discount Trustee Counsel fees. He clearly stated on the record in open court that he too withdrew any such offer in light of the continued litigation in this case.

As one will see explained in this Ruling, these tactics by Debtor and Debtor's counsel to make baseless arguments, eschew any need for legal authority or evidence, and for Debtor's counsel (current and prior) to merely parrot what Debtor dictates the law to be and why she does not need to comply with the Bankruptcy Code has infected this case since its filing in 2017. While Debtor complains about the fees and costs, they have been cause by Debtor's conduct, misconduct, and failure to repeatedly comply with the Bankruptcy Code. A trustee and counsel for a trustee cannot merely capitulate because a debtor is recalcitrant and intends to drive up the costs and expenses of the case if the trustee and trustee's counsel do not allow the debtor to violate the Bankruptcy Code.

**Summary of Debtor's Opposition**

Debtor filed an Opposition on August 2, 2019. Dckt. 228. Debtor argues that Trustee should be surcharged for emotional distress damages caused, and no fees awarded.

Debtor argues Trustee Counsel sought facts through discovery which were already available to Trustee Counsel, that the adversary proceeding in this case to evict the tenant in the Fremont condominium was filed without due diligence, and that hours were intentionally run up.

Debtor suggests that if the Motion is granted, that Debtor should be permitted to sue Trustee Counsel pursuant to the *Barton Doctrine*.

As discussed below and extensively at the hearing on this Motion, the Opposition prepared by Debtor's counsel is devoid of any legal authorities. It does not identify specific facts and events which are asserted to have caused the Debtor such great emotional distress. It does not provide any legal authorities for what would cause such great emotional distress that it would wipe out the right to payment for services rendered the Trustee in the Trustee fulfilling his fiduciary duties to obtain possession and control of property of the Bankruptcy Estate from a debtor, this Debtor, who refused to turnover such property and who used such property for her own personal purposes.

Much of the "Opposition" consists of cutting and pasting in the declaration testimony of Debtor, rather than providing the court with legal arguments and authorities. It is as if Debtor's counsel is either trying to insulate himself from his responsibilities (Fed. R. Bankr. P. 9011) or has, as discussed at the hearing, been reduced to merely the puppet to say whatever is dictated to him by the Debtor. As addressed by the court at the hearing, Debtor's counsel's conduct clearly is the latter, with the jury still out on the question of whether he was doing this as part of a well-thought-out scheme to try and circumvent Federal Rule of Bankruptcy Procedure 9011.

**Trustee Counsel's Reply**

Trustee Counsel filed a Reply to the Opposition on August 9, 2019. Dckt. 240. Trustee Counsel argues the following:

1. If Debtor is pursing legal action against Trustee Counsel, Debtor needs leave of the court.

2.      The transcript filed by Debtor as an Exhibit (Dckt. 230) demonstrates six demands for the turnover of $46,621.81 in nonexempt funds were made.

3.      The fees generated in this case were inflated due to Debtor's refusal to comply.

4.      The services here were necessary and reasonable.

**APPLICABLE LAW**

**Reasonable Fees**

A bankruptcy court determines whether requested fees are reasonable by examining the circumstances of the attorney's services, the manner in which services were performed, and the results of the services, by asking:

A.      Were the services authorized?

B.      Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

C.      Are the services documented adequately?

D.      Are the required fees reasonable given the factors in 11 U.S.C. § 330(a)(3)?

E.      Did the attorney exercise reasonable billing judgment?

*In re Garcia*, 335 B.R. at 724 (citing *In re Mednet*, 251 B.R. at 108; *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 860 (9th Cir. 2004)).

**Lodestar Analysis**

For bankruptcy cases in the Ninth Circuit, "the primary method" to determine whether a fee is reasonable is by using the lodestar analysis. *Marguiles Law Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 73 (B.A.P. 9th Cir. 2011) (citing *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir. 1983)). The lodestar analysis involves "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* (citing *In re Yermakov*, 718 F.2d at 1471). Both the Ninth Circuit and the Bankruptcy Appellate Panel have stated that departure from the lodestar analysis cap be appropriate, however. *See id.* (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood)*, 924 F.2d 955, 960, 961 (9th Cir. 1991) (holding that the lodestar analysis is not mandated in all cases, thus allowing a court to employ alternative approaches when appropriate); *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen*

4

*Factors, Inc.)*, 143 B.R. 560, 562 (B.A.P. 9th Cir. 1992) (stating that lodestar analysis is the primary method, but it is not the exclusive method).

**Reasonable Billing Judgment**

Even if the court finds that the services billed by an attorney are "actual," meaning that the fee application reflects time entries properly charged for services, the attorney must demonstrate still that the work performed was necessary and reasonable. *In re Puget Sound Plywood*, 924 F.2d at 958. An attorney must exercise good billing judgment with regard to the services provided because the court's authorization to employ an attorney to work in a bankruptcy case does not give that attorney "free reign to run up a [professional fees and expenses] tab without considering the maximum probable recovery," as opposed to a possible recovery. *Id.*; *see also Brosio v. Deutsche Bank Nat'l Tr. Co. (In re Brosio)*, 505 B.R. 903, 913 n.7 (B.A.P. 9th Cir. 2014) ("Billing judgment is mandatory."). According to the Court of Appeals for the Ninth Circuit, prior to working on a legal matter, the attorney, or other professional as appropriate, is obligated to consider:

> (a) Is the burden of the probable cost of legal [or other professional] services disproportionately large in relation to the size of the estate and maximum probable recovery?
>
> (b) To what extent will the estate suffer if the services are not rendered?
>
> (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*In re Puget Sound Plywood*, 924 F.2d at 958–59 (citing *In re Wildman*, 72 B.R. 700, 707 (N.D. Ill. 1987)).

A review of the application shows that Trustee Counsel's services for the Estate include general case administration, asset recovery and disposition, and tax liability assessment. The Estate has $43,000.00 of unencumbered monies to be administered as of the filing of the application. Dckt. 201. The court finds the services were beneficial to Client and the Estate and were reasonable.

**FEES, COSTS & EXPENSES REQUESTED**

**Fees Requested**

Trustee Counsel provides a task billing analysis and supporting evidence for the services provided. The Application also provides a detailed overview of the events in this case. The task

billing categories used by Trustee Counsel are as follows:

     Litigation and Contested Matters: Trustee Counsel spent 39.2 hours in this category.

     Assessment and Recovery of Property of the Estate: Trustee Counsel spent 28.1 hours in this category.

     Asset Disposition: Trustee Counsel spent 6.8 hours in this category.

     Fee and Employment Applications: Trustee Counsel spent 7.0 hours in this category.

     General Case Administration: Trustee Counsel spent 5.9 hours in this category.

     Administration and Objections: Trustee Counsel spent 4.3 hours in this category.

     Tax Issues: Trustee Counsel spent 4.1 hours in this category.

     Claims: Trustee Counsel spent 2.8 hours in this category.

     The fees requested are computed by Trustee Counsel by multiplying the time expended providing the services multiplied by an hourly billing rate. The persons providing the services, the time for which compensation is requested, and the hourly rates are:

| Names of Professionals and Experience | Time | Hourly Rate | Total Fees Computed Based on Time and Hourly Rate |
|---|---|---|---|
| J. Russell Cunningham | 30.4 | $425.00 | $12,920.00 |
| Nicholas Kohlmeyer | 66.8 | $225.00 | $15,030.00 |
| Courier | 1 | $50.00 | $50.00 |
| **Total Fees for Period of Application** | | | $28,000.00 |
| **Total Fees Requested** | | | $28,000.00 |

     Having been put to the time and expense for further hearing on the motion to abandon, Trustee Counsel requests an additional two hours of fees, $850.00 for the four hours spent at court for the hearing on the Motion to Abandon. The request for these fees is reasonable.

**Costs & Expenses Requested**

     Trustee Counsel also seeks the allowance and recovery of costs and expenses in the amount of $1,794.13 pursuant to this application.

///

The costs requested in this Application are:

| Description of Cost | Cost |
| --- | --- |
| Photocopies | $648.40 |
| Postage | $124.89 |
| Advanced Service and Recording Fees | $1,020.84 |
| **Total Costs Requested in Application** | $1,794.13 |

## FEES, COSTS & EXPENSES ALLOWED

**Discussion of Opposition by Debtor**

Debtor argues Trustee Counsel sought facts through discovery which were already available to Trustee Counsel, that the adversary proceeding in this case to evict the tenant in the Fremont condominium was filed without due diligence, and that hours were intentionally run up. On this basis, Debtor argues that Trustee Counsel "No, ZERO fees should be allowed." Dckt. 228 at 2:6 (emphasis in original).

Purportedly, the reason for disallowing all the fees is to offset emotional distress damages suffered by Debtor.

Despite Debtor's consternation over Trustee Counsel's conduct in this case and allegations that fees have been driven up, Debtor does not point to any specific fees as unreasonable. Trustee Counsel's Detailed Transaction File List was filed as Exhibit A. Dckt. 203. A comprehensive list of all fees were given, yet no fees were pointed to as the "smoking gun" showing that fees were unreasonably driven up. Debtor and Debtor's counsel ignore that evidence presented to the court.

Debtor argues that several facts were known to Trustee and no discovery was necessary. If this were true and Debtor was cooperating, it is unclear why it was necessary for the court to order the turnover of real property and post-petition rent monies when the Debtor refused to turnover property of the bankruptcy estate to the Trustee. *See* Order, Dckt. 109.

Further, it appears to be the argument of Debtor that she should have been taken at her word, and that Trustee and Trustee Counsel should not have done their due diligence in assessing the

1  veracity of Debtor's testimony. Debtor appears to be (as she, speaking in court over the direction

2  of her counsel not to speak in place of counsel at the hearing) highly offended that the Bankruptcy

3  Code negatively impacts her plans and schemes.[4]   Such an argument is not well taken.

4  **Grounds Asserted in Opposition**

5          The claims in this case were not significant in relation to the services performed by Trustee

6  Counsel. Rather, the driving force behind the $25,000+ in fees herein sought has been the conduct

7  of, and conflict with, the Debtor.

8          Trustee Counsel summarizes at length in the Motion Debtor's lack of cooperation and efforts

9  to hinder Client from fulfilling his fiduciary duties as the Chapter 7 Trustee.

10         The Debtor begins her opposition requesting that the court "surcharge" counsel's fees, as

11  opposed to having to sue counsel for alleged wrongs.  Debtor and counsel assert that the court

12  should shortcut a substantive adjudication of claims that Debtor may say exists, and just do a set-off

13  of unasserted claims.  Debtor and Debtor's counsel provide for legal authority for this proposition

14  as a way to deny an attorney representing a bankruptcy trustee his or her allowable fees and costs

15  pursuant to 11 U.S.C. § 330.

16         Debtor then asserts in the Opposition and Declaration (which has been cut and pasted into

17  the Opposition signed by the attorney) that Trustee Counsel should get "ZERO" (emphasis in

18  Opposition) in fees because:

19         A.      He has been necessary negligent and inflicted emotional distress on Debtor.

20         Though repeatedly requested at the hearing to specifically identify the events that "inflicted"

21  such emotional distress, the best that Debtor's counsel could do was to say that the Trustee and

---

23      [4] When Debtor first started to speak up over her counsel's instructions not to do so, the court
    explained to her that it was her attorney who speaks for her in court.  She continued in interrupting her
24  attorney and the court, insistent that she be allowed to speak.  Finally, the court relented and allowed her
    the opportunity to speak over her attorney, who just capitulated to his client's demands that she be
25  allowed to speak for herself and not be limited by her attorney.  Debtor's comments clearly showed that
    she had no basis for asserting that Trustee Counsel had acted improperly in conducting simple discovery,
26  commencing the Contested Matter for the turnover of the property of the Bankruptcy Estate - for which
    the court had to issue an order because even when faced with the Motion Debtor refused to turnover the
27  property of the Bankruptcy Estate, and the Adversary Proceeding (18-2072) that Trustee Counsel filed for
    the Trustee to obtain possession of the Barrington Terrace Property that was property of the Bankruptcy
28  Estate.

Trustee Counsel did not blindly believe the Debtor and do what the Debtor told them to do.

      B.     Counsel has filed motions for discovery and adversary proceeding to obtain possession of property of the bankruptcy estate.

Again, Debtor's counsel could not articulate a coherent argument why it was improper for the Trustee and his Counsel, in fulfilling the Trustee's fiduciary duties to the bankruptcy estate, to undertake such discovery and action to obtain possession and control of property of the bankruptcy estate from the Debtor who was refusing to turn over property of the estate.

      C.     Counsel played dumb at the multiple 341 hearings, which were conducted on September 25, 2017, October 30, 2017, and November 27, 2017.

No evidence of Counsel playing "dumb" was presented. Rather, as discussed below, a review of the First Meeting transcripts demonstrates that the Debtor knew she had to turn over property of the Bankruptcy Estate, refused to do so, and attempted to negotiate "terms" for her to turn over some portion of the property of the Bankruptcy Estate.

This continued, as Debtor's counsel argued at the hearing that Debtor was refusing to turnover property of the Bankruptcy Estate to the Trustee unless the Trustee would agree to the Debtor's demands as to what claims would be paid in the case. Debtor and Debtor's counsel appeared to believe that Debtor could dictate the terms of what creditors would be paid as a condition precedent to Debtor complying with her statutory duties and obligations under the Bankruptcy Code.

      D.     Debtor testified as to the facts concerning her transfer of assets in 2017, shortly before she filed bankruptcy that led to a 1031 exchange and the Trustee had no reason to not believe her. Further, that it was unreasonable, and caused Debtor great emotional distress, that the Trustee and Trustee Counsel undertook investigation about the transfers made on the eve of bankruptcy, identifying property of the bankruptcy estate, and obtaining possession of property of the Bankruptcy Estate from the Debtor and third-parties in fulfilling the fiduciary duties of the Trustee, as assisted by Trustee Counsel.

As discussed at the hearing, the evidence presented by the Debtor clearly shows that she was intending to hinder, delay, and defraud creditors by her transfers on the eve of bankruptcy, and that the scheme continued into the bankruptcy case by her continuing actions, assisted by counsel, to not turnover property of the Bankruptcy Estate to the Trustee.

E.  Debtor filing Chapter 7 was "ill advised" and the Trustee should not have conducted discovery. The equities were in the Debtor's favor and the Trustee should not have worked to enforce the rights and interests of the bankruptcy estate, but should have worked for the Debtor's interests as she wanted to have them (without regard to the laws of the United States as enacted by Congress).

There is no evidence presented that the Trustee should not have fulfilled his fiduciary duties or that any conduct of the Trustee or Trustee Counsel was outside of or inconsistent with those fiduciary duties.

F.  Because the Trustee would not work for the Debtor, she has suffered emotional distress.

Though repeatedly asked, counsel for the Debtor could not point to any conduct of the Chapter 7 Trustee that would inflict emotional distress, other than the Trustee fulfilling his fiduciary duties and not "dancing on the end of a string" to do the Debtor's bidding.

G.  Debtor's case was "simple," notwithstanding Debtor intentionally and willfully transferring her assets on the eve of bankruptcy to trusts which she asserted worked to hinder, delay, and prevent the Trustee or creditors recovering those assets as property of the bankruptcy estate and administered in this case.

As repeatedly discussed at the hearing, the case was simple and all the Debtor needed to do was to turnover approximately $25,000.00 of the property of the Bankruptcy Estate (from the more than $1,000,000.00 of such assets) for the Trustee to pay all claims and expenses. The Debtor refused, improperly retaining and depriving the Trustee of possession and control of property of the Bankruptcy Estate. At the hearing Debtor's counsel argued that the unreasonableness of Trustee and Trustee Counsel was made even more "egregious" because Debtor asserts that the claims to be paid were only $11,000.00.

The court, in hearing this (though no computation as to how the Debtor computes the claims to be paid at $11,000.00) at the hearing, pointed out to Debtor's counsel that as to "unreasonableness," this only makes the case worse for the Debtor. All that Debtor needed to do, based on Debtor's counsel's arguments, to comply with the Bankruptcy Code was to turnover in

2017 even less property of the bankruptcy estate (money) - which she refused to do.[5]

H.  That because the Trustee sought to liquidate assets of the Estate, and had not gotten an order approving the sale before deciding that assets should be sold, is improper. Further, the Trustee contacting the broker for the assets to be liquidated without first obtaining an order authorizing the sale is improper.

There is no evidence presented that the Trustee attempted to sell assets other than as permitted under the Bankruptcy Code.  It appears that Debtor's "complaint" is that the Trustee contracted the broker for Debtor's investment account to take control of that property of the Bankruptcy Estate.  That the Trustee, in fulfilling his fiduciary duties interfered with the Debtor's post-bankruptcy filing attempts to control and use the property of the Bankruptcy Estate.

Debtor's Counsel then includes the following additional assertions as part of the Opposition to the Motion for Compensation:

I.  Debtor has investments and is represented by Bangerter Financial Services, Inc.

Debtor does not address that if these are assets of the bankruptcy estate, then it is the Trustee for whom Bangerter owes its duties and obligation.

J.  Debtor may blame others for the outcome of her making the transfer of assets on the eve of bankruptcy and then asserting that by virtue of those intentional transfers the Trustee and Creditor are hindered, delayed, and prevented from administering the property transferred as property of the bankruptcy estate and to pay creditors.

K.  Debtor suffered medical ailments when she feared that the Chapter 7 trustee would administer assets of the bankruptcy estate - assets that she asserted she transferred, she retained the beneficial interest in, and that the transfer worked to hinder, delay, and prevent the trustee from administering, or even asserting, that the assets were property of the bankruptcy estate.

These arguments and statements by the Debtor further solidify Debtor's plan/scheme to hinder, delay, and defraud creditors by her eve of bankruptcy transfers which she asserted preserved them for herself and left nothing for creditors.

Conspicuously absent from the Motion are any legal authorities for what Debtor argues.  No

---

[5]  This is another of the arguments that baffled the court as being made by counsel, and demonstrates that counsel was merely repeating what Debtor thought were arguments, not what Debtor's counsel believed were arguments made in good faith, based on the evidence, and existing or nonfrivolous arguments for extensions/modifications of existing law.

legal authority is presented by Debtor for this court overruling the Supreme Court and tossing the *Barton* decision on the ash heap of history.  No legal authorities for asserting that Debtor could demand that the court just "setoff" 100% of what counsel seeks in fees against the alleged grievous injuries inflicted by the Trustee fulfilling his fiduciary duties to the bankruptcy estate, with the assistance of counsel.

**Review and Discussion**
**of Exhibits Provided by Debtor**

The Debtor provides some interesting exhibits.  The first is a letter from Bay Area Legal Aid which states that the tenant in possession of the Barrington Terrace property of the bankruptcy estate is in there based on a lease.  No copy of the lease is included with the exhibit.  Dckt. 229.  It affirmatively states that the Debtor is the "landlord."

The letter goes further, stating that since this is a Section 8 governmental housing subsidized rental, the government records indicate that the Trustee first began receiving payments in August 2018 - which was one year after Debtor commenced her bankruptcy case.  Such rent monies would be property of this bankruptcy estate.

In seeking the turnover of property of the Bankruptcy Estate, including the Barrington Terrace property and its rents, in his declaration dated May 21, 2018, the Trustee testifies that the Debtor had refused to turnover the Barrington Terrace property and the rents thereon.  Declaration, ¶¶ 4,5; Dckt. 84.  As discussed below, Debtor's response to the Motion requiring her to comply with the Bankruptcy Code and turnover property of the Bankruptcy Estate to the Trustee was that since she was wanting to object to claims, the court should not rule on the Trustee's Motion and let her retain the property of the bankruptcy estate.  Response, Dckt. 102.

Additionally, with respect to the rental of any properties, on Schedule G filed in this case Debtor states under penalty of perjury that she is not a party to any leases, which would include the Barrington Terrace Property.  Dckt. 32 at 22.

**First Meeting of Creditor Transcripts**

Debtor and Debtor's counsel drop on the court as another unnumbered exhibit eighty-two (82) pages of First Meeting of Creditors (341 Meeting) transcripts.  Dckt. 230.  No portions are

highlighted or identified for the court's focus.  Nothing is provided in the Motion as to what, if any, portions of the eighty-two (82) pages that are relevant to the Motion.  Instead, it appears that Debtor and Debtor's counsel contention to the court (as has been to the Trustee and Trustee Counsel), "yeah, it supports our position, you don't need to read it, we will just tell you the conclusion you will have."

The court has waded through the eighty-two (82) pages of the multiple transcripts (for which Debtor and Debtor's counsel do not direct the court to any specific parts) for the three First Meeting of Creditors (at which Debtor was represented by counsel) to try and identify how information therein supports the arguments stated in the Opposition.  As the court addressed at the hearing and is shown below, the transcripts do not support Debtor's general assertions repeated by Debtor's counsel, but show that Debtor's scheme to violate the Bankruptcy Code existed at the filing of this case.

November 27, 2017 341 Third First Meeting Transcript

The court's review begins with the final, third First Meeting conducted of the Debtor in this case.  Some of the notable points include the following.

A.  Trustee asks about why the $46,621.81 of nonexempt monies of the Bankruptcy Estate in a Chase checking account have not been turned over.  The Trustee notes that the request was sent to her counsel on November 6, 2017, and that the monies have not been turned over as of November 27, 2017.  Transcript, p. 1:17-25; Dckt. 230.

B.  At the November 27, 2017, First Meeting of Creditors Debtor states that she just received an email from Paul and doesn't know how much of the $46,621.81 in nonexempt assets that are property of the bankruptcy estate that she is suppose to turnover.  *Id.*, p. 2:1-5.

C.  Debtor expresses her opinion that the Trustee does not need an attorney, stating:

MS. SHENG: Okay. I don't know why do you want to hire him 'cause I don't really have much credit card debts --

TRUSTEE NIMS: Unn hmm.

MS. SHENG: -- and that the main debts is mortgage payment, -

*Id.*, p.7:15-20.

Debtor commenced this case as one under Chapter 13, filing it in *pro se* on August 2, 2017.  Debtor then substituting in her former counsel, Gary Fraley, on August 30, 2017, the same day as the notice

1   of conversion to Chapter 7 was filed.

2      When the first First Meeting of Creditors was conducted on September 25, 2019, and the

3   second and third First Meetings subsequently conducted, Debtor was represented by counsel. It is

4   unclear why Debtor believes that she should be represented by counsel but it was unreasonable for

5   the Trustee to be represented by counsel.

6      D.     The Trustee states:

7             TRUSTEE NIMS: Right. So the -- I can only say in -- **in unqualified**
**terms you need to pay over the funds that I have requested from**
8             **you**. If not, **I will be forced to have Mr. Cunningham file a motion**
**with the court** and then have I believe my chance of, you know,
9             getting a turnover order from Judge Sargis, would be very good here.
And then if you fail to turn over the funds you, you know, you'd have
10            issues of contempt. But that's a discussion for another day. And,
luckily, you're –represented adequately by counsel.

11

12       *Id.*, p. 16:17-25, 17:2-3 (emphasis added).

13   The transcript provided by Debtor clearly shows that she and her counsel, as of November 27, 2017,

14   clearly knew, were told, and advised of the legal work the Trustee would have Trustee Counsel

15   undertake if Debtor did not comply with the Bankruptcy Code and turnover property of the

16   Bankruptcy Estate to the Trustee.

17      E.     The Trustee states:

18             TRUSTEE NIMS: -- and I'm not giving you legal advice, but I would
strongly encourage you to discuss **this issue with counsel about the**
19             **wisdom of spending assets that are not technically yours, they're**
**mine,** and -- and on improvements on them, so.

20

21       *Id.*, p. 17:19-23 (emphasis added).

22      F.     The discussion continues:

23             MS. SHENG: -- but the other, you know, mortgage I should continue
pay them.

24             TRUSTEE NIMS: Luckily, again, you have, you know, **represented**
**by good counsel and you should listen to counsel** in terms of what
25             debts you ought to pay and ought not to pay and I'll leave it at that.
But in terms of repairing roofs and whatnot, please have that
26            discussion with your attorney.

27       *Id.*, p. 16:2-9 (emphasis added).

28   This comment, reenforcing that Debtor should listen to and follow the advice of her attorney

foreshadows the developments in this case demonstrating that it is the Debtor, not the attorney, who dictates what shall be done and what the attorney should do (without regard to the actual facts and the law).

G.    The Trustee explained his role and his duties. *Id.*, pp. 19:12-25, 20:1-12.

H.    Trustee and counsel for the Debtor discuss there being approximately $25,000.00 in claims that were already filed in the case. *Id.*, p. 8:11-18, p. 9:3-5; p. 26:9-18; .

I.    With respect to the nonexempt $46,621.81, the Trustee states:

> TRUSTEE NIMS: **So, if -- what I'm getting at here is by your own petition that was voluntarily filed, there's 46 some -- 46 some odd thousand dollars of unexempt interest in that Chase Bank account that has to be turned over to -- to my control**. And I will pay creditors' claims that are valid out of it and if there's **anything left, it goes back to you**. I am bonded and, again, under the supervision of both the court and the U. S. Department of Justice, so to the extent you're worried about me holding onto those monies, you ought not to be. **But it is important for me to impress upon you that you have to turn over that money**.

*Id.*, p. 20:14-25.

J.    Debtor talks about having significant cash, notwithstanding her having spent monies of the bankruptcy estate, in the bank accounts and how she wants to use the monies, which are property of the bankruptcy estate, rather than turning it over to the Trustee.

> MS. SHENG: Well, right now I -- I should 2 bring a copy of my Chase account. I -- the last time I look 3 at it I think it's about twenty-six, twenty-seven thousand.
>
> TRUSTEE NIMS: Ahh ha. And the fact that you spent it down is not particularly material to me because, again, the magic time is when you converted on the thirtieth of August. That money was property of the estate. I need to have it turned over.
>
> MS. SHENG: Well, I -- I don't have that much.
>
> TRUSTEE NIMS: Okay.
>
> MS. SHENG: How am I going to do it?
>
> TRUSTEE NIMS: You -- if I understand correctly, you have six hundred and some odd thousand dollars in yet another account. Is that correct?
>
> MS. SHENG: So Wells Fargo is checking.

*Id.*, p. 21:1-16.

K.    The Trustee clearly explains his duties to administer property of the estate and the

Debtor's obligation to turn over the monies as property of the bankruptcy estate, otherwise, the Trustee will proceed with liquidating other assets, including the 1031 exchange property.

L.    The Trustee clearly states, and the Debtor clearly understands, that she must turnover the remaining $26,000.00 of the cash in the bank accounts (after Debtor having spent down $20,000.00 from the nonexempt monies.

TRUSTEE NIMS: Let's make this clear. I want you -- I don't care if the claims are fraudulent, 18 false, you know, whatever, you need to **send me everything in that Chase account now**. I'll sort out the claims. If they're invalid, I'll send the money back to you. But I need to hold onto it now. It's my job. Okay?

Here's my address, okay? And you make the check, it's a money order or cashier's check payable to Eric J. Nims, Chapter 7 Trustee.

MS. SHENG: Oh, where's the address.

TRUSTEE NIMS: The address is up top, that p. o. box.

MS. SHENG: Oh, **okay, I got it.**

TRUSTEE NIMS: Okay? But **you need to do that immediately, please**.

MS. SHENG: Twenty-six thousand?

TRUSTEE NIMS: Whatever the balance is --

**MR. BINDRA** [Paramit Bindra, Debtor's counsel]**: Whatever you have in there --**

TRUSTEE NIMS: -- in the --

**MR. BINDRA: -- right now.**

TRUSTEE NIMS: Okay?

**MS. SHENG: Okay. Okay**. I still waiting for some checks to come to return 'cause the -- the money I paid out. **So I just get whatever left in there**.

TRUSTEE NIMS: Yes. All right?
 **MS. SHENG: Okay.**
. . .
MS. SHENG: So that the -- the list I gave you then **I need to leave some money for [inaudible]**?

**MR. BINDRA: Don't use that money.**

TRUSTEE NIMS: No.
. . .
**MR. BINDRA**: Well, you have other bank accounts where the funds

16

were exempted if you can pay it out of that account. Let me see if -- but at the moment **anything in that Chase account needs to be mailed to him** [the Trustee].
. . .
TRUSTEE NIMS: -- $20,000.00 in cash and, well, approximately $4300.00 in a Wells Fargo account. You still have those assets?

MS. SHENG: Yes
. . .
MR. BINDRA: You had stated when you were doing -- came to the office **like you had $20,000.00 in cash. Do you have twenty thousand in cash**?

MS. SHENG: In which account?

TRUSTEE NIMS: Just in cash.

MR. BINDRA: Just in cash.

MS. SHENG: That's -- **that's money in the bank.** I don't -- I don't hide money under mattress
. . .
MR. BINDRA: -- it appeared that, you know, we asked you. That's why **we have you review each page, initial each page and, you know, we asked -- you said you had twenty thousand in your possession**. So that could be in your wallet, can be at home or, you know, I'm -- whatever you –

MS. SHENG: **It's in the bank**.

*Id.*; 29:16-25,  30:1-16, 21-23,  31:2-5, 12-15,  32:4-11, and 33:9-15 (emphasis added).

Amended Schedule A/B clearly states that there was $27,550.81 in the Chase Bank Account and $4,296.00 in the Wells Fargo Checking Account, which did not include any of the tenant security deposits (which are listed as being in "Financial Account"). Dckt. 49 at 6. This appears to be the spent down amount for Debtor's post-petition withdrawals in the twenty-eight days from filing under the August 30, 2019 conversion.  On Amended Schedule C, Debtor states she is claiming an exemption of $4,293.00 in the Wells Fargo Account and $929.00 in the Chase Account. Dckt. 50 at 2.

> M.    Again, the Trustee makes it clear, turn over the $46,621.81, or the lesser amount remaining after Debtor has spent part of the monies.
>
>> TRUSTEE NIMS: Unn hmm. Unfortunately, you're in bankruptcy and you have the -- protected the automatic stay. But I'll leave that discussion --

1    MR. BINDRA: [Inaudible] --

2    TRUSTEE NIMS: -- between you and your attorney**. I'm directing
     you to turn over the Chase account**.  And how -- what you choose
3    to turn over to me is your choice. But your choice has consequences.

4    MS. SHENG: Well, I -- can I just at least withhold three thousand
     five?
5
     TRUSTEE NIMS: **I'm directing you** --
6
     MS. SHENG: He's leaving --
7
     TRUSTEE NIMS: -- **to turn over everything**.  But what you choose
8    to do is your choice, so.

9        p. 39:3-16 (emphasis added).

10       The Debtor continues in what has been shown to be a pattern of trying to negotiate her

11   compliance with the law requiring her to turnover property of the Bankruptcy Estate, refusing to do

12   so unless the Trustee agrees to her demands.

13   <u>October 30, 2017, Second First Meeting of Creditors</u>

14       The court then reviewed the transcript of the October 30, 2017 Transcript of the second First

15   Meeting of Creditors and  notes the following:

16   A.   Debtor states that the 1031 exchanges were done in June 2017 - with the bankruptcy
          being filed August 2, 2017.  *Id.*, 341 Oct. Transcript, p. 3:12-20.
17
     B.   Debtor discusses the challenges she has with her two timeshares at Lake Tahoe.  *Id.*
18        at 8:16-25, 9:1-25, 10:1.

19   <u>September 25, 2019 first First Meeting of Creditors</u>

20       For the Transcript of the September 25, 2017 341 Meeting, the testimony of the Debtor under

21   penalty of perjury includes the following.

22   A.   With respect to the accuracy of the information the Schedules, Statement of Financial
          Affairs, and related Documents Debtor testified under penalty of perjury that all of
23        the information was accurate and that she had reviewed it before it was filed.

24       TRUSTEE NIMS: Okay. **Did you read those documents** [schedules,
         statement of financial affairs, and related documents] **before you
25       signed them?**

26       MS. SHENG: **Yes.**

27       TRUSTEE NIMS: I'm sorry?

28       MS. SHENG: **Yes.**

18

1

2     TRUSTEE NIMS: Okay. Are you **personally familiar with the content** of those documents?

3     MS. SHENG: **Yes.**

4     TRUSTEE NIMS: To the best of your knowledge **is the information in your bankruptcy petition and all the related documents true and correct**?

5

6     MS. SHENG: **Right. Yes.**

7     Transcript, Sept. First Meeting of Creditors, p. 3:2-14 (emphasis added).

8   As seen in connection with the later second and third First Meetings, as the Debtor began to feel

9   trapped in connection with turning over the property of the Bankruptcy Estate to the Trustee, she

10  began to recant the above, stating that there were errors.

11          B.      Debtor testifies to having a prior Chapter 13 case in the Northern District of California (Alameda County) in which she received a discharge. *Id.*, p. 4:8-16.

12

13  **Review of Other Pleadings and History of this Bankruptcy Case**

14          The court has also reviewed the Docket in this case, other pleadings filed, and the court's

15  rulings on matters in considering Debtor's contention that Trustee Counsel has engaged in

16  unnecessary work and has cause her great emotional distress.

17  <u>Motion to Abandon, Filed March 28, 2018 - Dckt. 71</u>

18          The Trustee filed a Motion to abandon the Corriente Way Property to the Debtor. Dckt. 71.

19  This is listed on Amended Schedule A/B as the Debtor's "Personal Residence," having a value of

20  $830,000.00. Dckt. 49 at 1. On Schedule D, Debtor lists this property being secured by a

21  "disputed" secured claim of Select Portfolio Servicing, Inc. in the amount of ($1,179,286.00) and

22  the "disputed" secured claim of Verdera HOA in the amount of ($26,000.00). Dckt. 32 at 14-15.

23          The Trustee asserted in the Motion that the property was significantly over-encumbered and

24  a burden to the Bankruptcy Estate. No opposition was filed to the Motion. The Order abandoning

25  the property was entered on April 24, 2018. Dckt. 76.

26          This appears to be a normal, necessary undertaking of legal services for the Trustee in an

27  asset Chapter 7 bankruptcy case.

28  ///

Motion for Turnover of Property to the Trustee,
Filed May 21, 2018, Dckt. 82.

By the Motion for Turnover, the Trustee was seeking an order enforcing the Bankruptcy Code in light of Debtor failing to turnover property of the Bankruptcy Estate.  The property that is the subject of the Motion is: (1) the Barrington Terrace Property, (2) all rental agreements relating to that property, (3) all post-petition rents for that property that the Debtor had received, and (4) an accounting for all such rents received for that property.  Dckt. 82.

The Trustee provided his testimony in support of the Motion, stating that he had made demand for the property to be turned over, but those demands had "gone unanswered."  Declaration ¶ 5, Dckt. 84.  Debtor, represented by her prior counsel, responded.  Dckt. 102.  The Response did not deny or counter the allegations and evidence presented that demands for turnover of the property of the Bankruptcy Estate had been made and the Debtor failed to comply with the requirements of the Bankruptcy Code.  Rather, Debtor's response was that since Debtor was objecting to claims, the Chapter 7 Trustee in her bankruptcy case should not be fulfilling his fiduciary duties, but merely sit back and let Debtor remain in control and possession of property of the Bankruptcy Estate while the Debtor managed the case and the property of the Bankruptcy Estate.

In reply to the Response, the Trustee filed his Supplemental Declaration in Response, Dckt. 104, which includes (identified by the paragraph number in the Declaration):

> 3. I believe that the **Debtor has utilized, and continues to utilize, her checking account with Chase Bank to deposit rents received on account of the real property located at 2769 Barrington Terrace Avenue, Fremont, CA** 94536 ("Subject Property") [these rents being property of the Bankruptcy Estate, as is the Barrington Terrace property]. **On November 6, 2017, I made demand to the Debtor, through her counsel, for turnover of the estate's unexempt interest** in the Debtor's **Chase Bank checking account**. This **demand went ignored**. A copy of my November 6, 2017 e-mail is filed herewith as Exhibit A.

> 4. On May 7, 2018. **I requested, through the Debtor's counsel, that the Debtor allow my realtor access to** the Subject Property for inspection. This **request went ignored**. A copy of my May 7, 2018 e-mail is filed herewith as Exhibit B.

> 5. On **May 15, 2018, my counsel requested by phone, and through e-mail, that the Debtor allow my realtor access to the Subject Property for inspection.** This request went ignored.  A copy of my counsel's May 15, 2018 e-mail is filed herewith as Exhibit C.

The Exhibits filed show the clear, unequivocal demands made on the Debtor to comply with the Bankruptcy Code and turnover possession of the property of the Bankruptcy Estate to the Trustee.  Exhibit A is an email from the Trustee to Paramprit (Paul)  Bindra (Debtor's counsel) which states:

> Paul:
>
> A quick review of the amended Schedule C filed in the above-referenced case on November 3, 2017 shows **debtor has chosen to exempt only $929.00 of the $47,550.81 value of her Chase checking account**.
>
> Accordingly, please **direct debtor to immediately send to me at the address below a certified check or money order made payable to "Eric J. Nims, Ch. 7 Trustee" in the amount of $46,621.81**, which by my calculation is the estate's unexempt interest in that asset.
>
> Please confirm you have received this email and debtor will comply as set forth above.
>
> Thank you.
> Eric J. Nims
> Chapter 7 Bankruptcy Trustee & State Court Receiver

Exhibit A (emphasis added), Dckt. 105.  This email is dated Monday, November 6, 2017, and clearly shows that the Trustee has demanded that the monies be turned over, now almost two years ago.

Exhibit C is a May 15, 2018 email, six months later, sent by the counsel for the Trustee to Gary Fraley, the senior partner in the law firm then representing Debtor, which states:

> Gary,
>
> Following up on the message I left with your receptionist this morning, **please provide the contact information for the tenant at the 2769 Barrington Terrace** Ave. property in Fremont. **If I don't receive a response** by close of business Thursday, I will take that as the **Debtor's unwillingness to cooperate and file a turnover motion**.
>
> Thanks,
> Nick Kohlmeyer | Attorney
> Desmond Nolan Livaich & Cunningham

*Id.* (emphasis added).  Contrary to Debtor's, and Debtor's current counsel's contention, that there was outrageous conduct by Trustee Counsel and unnecessary work done, the evidence presented shows clear, measured steps, intended to minimize legal expenses for the Bankruptcy Estate - so long as Debtor complied with the Bankruptcy Code and turned over property of the Bankruptcy Estate to the Trustee.  It is the Debtor's failure to comply with the law that has required the

additional steps to be taken and the legal fees and expenses incurred for the Bankruptcy Estate.

The Court granted the Motion at the June 28, 2018 hearing. Order Dckt. 109. The court's findings in the Civil Minutes, Dckt. 108, include the following:

> Debtor's Response fails to acknowledge that a bankruptcy estate has been created and that, pursuant to Bankruptcy Code § 541(a)(1), the bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case. Rather, **Debtor** appears to exempt herself from federal law as enacted by Congress, assert that she can file Chapter 7 and **ignore the law, and assert that Chapter 7 exists as her personal tool to use (and abuse) against others**.

> Debtor contends that because she (though not obtaining authorization from the court or determination that she has standing to so do) is objecting to the claims of Cach, LLC (POC #2) and Capital One Bank (USA), N.A. (POC #3), she will not really owe any debt, so her desire to object to claims renders the bankruptcy laws moot.
> . . .
> The court notes that **Debtor has chosen (or refused) to provide any testimony in opposition to this Motion**, instead using the two paragraph arguments of her counsel as a shield between her and the Motion. Debtor's counsel ignores 11 U.S.C. § 541 and the obligations of the Chapter 7 Trustee to control, assemble, and manage all property of the bankruptcy estate. 11 U.S.C. § 704, 721.

> As evidenced in Movant's Supplemental Declaration, **Debtor has failed to respond** to inquiries by the Chapter 7 Trustee, directly related to the Property, **despite the clear language of § 542(a), requiring someone in possession of property of the estate to deliver such property**, as well as documentation related to the property, **to the Chapter 7 Trustee**. Debtor's Response to the Motion for Turnover of Estate Property indicates either a failure to understand these sections of the Bankruptcy Code, or a refusal to comply.

Here, a year after Debtor was clearly aware that the Trustee was required to take control of and administer all property of the bankruptcy estate, and that Debtor was obligated to turnover property of the estate. It had not been turned over. Debtor continued her strategy that the Trustee does not need to fulfill his duties and she, the Debtor, do not need to comply with the law, because "I, the Debtor, want to do it differently" than the law provides.

Motion for 2004 Examination Order, Dckt. 86.

On May 21, 2019, the Chapter 7 Trustee filed a "routine" motion for authorization to conduct a 2004 examination discovery to the Debtor, Hao Yuan, Chase Bank, Fidelity National Title Company, and Wells Fargo bank about a granting deed purporting to convey the Barrington Terrace Property within 60 days of Debtor commencing her voluntary bankruptcy case. Dckt. 86.

The court granted the routine 2004 examination request. Order, Dckt. 90.

1  | Motion to Withdraw as Counsel filed by Gary Farley, Debtor's
   | Former Counsel in This Case, Filed October 30, 2018.   Dckt. 130
2  |

3  |       Former counsel states with particularity (Fed. R. Bankr. P. 9013) the grounds as the basis

4  | for the court allowing him to withdraw from representation of Debtor in this bankruptcy case include

5  | the following (identified by paragraph number in the Motion):

6  |          1. Debtor's refusal to cooperate with Counsel, even attending scheduled
   |          hearings set for attorney appearances only and in spite of being told not to
7  |          attend; **attempting to proceed as if pro se and criticizing current counsel
   |          in open court**--making it impossible to represent her best interests as well as
8  |          sabotaging the attorney-client relationship.

9  |          2. **Debtor's insistence that counsel comply with her directives** regarding
   |          advancing legal strategy and becoming angry upon his refusal thereafter,
10 |          making it difficult to carry out counsel's employment effectively.

11 |          3. Further undermining the attorney-client relationship was the fact that
   |          Debtor became progressively abusive to Counsel's staff.
12 |

13 | Dckt. 130 (emphasis added).

14 |       The Debtor, her current counsel, and her former counsel filed a substitution of attorney and

15 | the court issued the order thereon filed November 20, 2019.  Dckt. 137

16 |       This theme of the Debtor demanding and her counsel dancing on the end of her string,

17 | without regard to what the law allows and requires, continues with her current counsel.  Rather than

18 | getting the case resolved and done, the Debtor and her counsel work to foment litigation, drive up

19 | costs, and try (unsuccessfully) to force capitulation by being the "bully of the school yard."

20 |
21 | Motion to Compel Employed Professionals by the Chapter 7 Trustee
   | to File Fee Applications.  Dckt. 147.

22 |       One of the first things done by Debtor's current counsel was to file a motion to compel the

23 | professionals acting for the bankruptcy estate to file fee applications.  As with so many of current

24 | counsel's pleadings in this case (as opposed to his pleadings in other cases) it is devoid of any legal

25 | authority for such a motion.  Rather, it is merely just a demand made by the Debtor.

26 |       The one "authority" cited is Local Bankruptcy Rule 3016-2, which relates to the Chapter 7

27 | trustee filing a motion for his or her fees in bankruptcy cases.  This Local Rule clearly applies to

28 | only a trustee, and was adopted to address the situation where high percentage trustee fees were

1  requested in bankruptcy cases in which there was little work done by the trustee, such as the sale of

2  a home that generated significant revenues for creditors with secured claims and the trustee claiming

3  large fees based on a "deal" cut with the creditors with secured claims, but the sale generated

4  nothing of significant benefit for the bankruptcy estate.

5       Counsel tries to slip this lack of authority by the court, citing to the inapplicable Local Rule

6  by using the qualifier "If broadly construed."  Motion, Title, pp. 1:16, 2:7; Dckt. 147.  The Motion

7  is devoid of any legal basis how a Local Rule applying to a Chapter 7 trustee can be "broadly

8  construed" as a basis for Debtor to foment more litigation.

9       The court issued its ruling on the Motion, stating the court's findings of fact and conclusions

10  of law in the Civil Minutes.  These findings and conclusions include:

11          However, there are two issues with Debtor's argument. First, Local
          Bankruptcy Rule 2016-2 governs compensation of the Chapter 7 Trustee.
12          **Here, Debtor is seeking to compel Trustee's Counsel, and not the
          Trustee, to file a fee application.**

13          **Second, merely pointing to a Local Rule which indicates the court
14          possibly has the authority to make some order is not the same as
          pointing the court to such authority.** No grounds are stated in the Motion
15          explaining why Debtor is entitled to the relief requested.

16  Civil Minutes, Dckt. 168 at 3.  The court denied the Motion.  As noted, the nature of the motion

17  appears to be one not prepared by an attorney based on the law, but merely reciting and demanding

18  from the court what a client, the Debtor in this case, dictates the attorney, Debtor's current counsel,

19  will do, without regard to the law.

20
21  <u>Motion to Convert Chapter 7 Case to One Under Chapter 11,</u>
   <u>Filed May 13, 2019.  Dckt. 149.</u>

22       Debtor and Debtor's counsel's next endeavor was not to bring the Chapter 7 case to a quick

23  end and turn over the very modest (in light of the Debtor having more than $1,000,000.00 in assets

24  she was working to keep away from the Trustee) amount necessary to pay claims and allowed

25  expenses and get the Chapter 7 case done and closed.  Instead, Debtor and Debtor's counsel then

26  advocated for converting the case to an expensive, costly (assuming that competent Chapter 11

27  counsel is fairly paid for his/her time) Chapter 11 case.

28       In denying that Motion, the court's findings of fact and conclusions of law stated in the Civil

Minutes, Dckt. 179, discuss not only the merits of the Motion, but the continuing strategy to avoid compliance with the Bankruptcy Code and to inflict harm on the Chapter 7 Trustee and Trustee counsel for attempting to fulfill their fiduciary duties to the Bankruptcy Estate. The court's finding and conclusions include:

> Debtor argues she intends to vigorously oppose any administrative expenses of the Chapter 7 estate and its professionals anyway, so those expenses will be incurred notwithstanding conversion to Chapter 11. However, correspondingly, even if the case is converted to Chapter 11, the Debtor will finance such a fight, so there is no savings in that regard by the conversion.

> Debtor also states:

> **I want Cunningham and Nims ejected from the administration of this case** and I hope that the court will convert the case to so facilitate. I am very elderly and **I need to be returned to the possession of the estate** so that at least **I can spend a portion of my money while I am still alive.** Declaration ¶ 6, Dckt. 171.
> . . .

> **Dismissal Pursuant to 11 U.S.C. § 706(a)**

> Debtor in her Declaration provides her "expert legal opinion" that conversion is permitted as a matter of right in this case because she did not file all documents required after filing her Chapter 13 case. In substance, she argues that because she failed to file all of the Chapter 13 documents, and then **elected to voluntarily convert her Chapter 13 case to one under Chapter 7 as provided in 11 U.S.C. § 1307(a), she can delete the limitations of 11 U.S.C. § 706(a) as they apply to her voluntary conversion to Chapter 7.**

> **This frankenstein legal argument/testimony is inconsistent with credible layperson testimony and then an attorney providing the legal authorities and analysis. First, it is unclear why Debtor** is providing legal analysis **through her Declaration. Debtor has not stated that she is an attorney licensed to practice in the state** of California, and a review of her schedules does not disclose such information.

> Second, this "legal argument" appears to have no basis in law or fact.

Civil Minutes, Dckt. 179 at 5-6 (emphasis added).

It is clear that the Debtor is dictating to, and bullying, her attorney as to what will be argued - without regard to the law. The Debtor expressly states that she does not want to do this to avail herself of her rights under the Bankruptcy Code, but "so that at least I can spend a portion of my money while I am still alive."

The Civil Minutes for the Motion to Convert further address why what is argued by Debtor

1  is clearly wrong, something that every attorney moderately skilled (and Debtor's counsel

2  demonstrates more than moderate legal skill in other cases) well knows is wrong.

3          Possibly, this "legal argument" was **introduced through Debtor's
           testimony because Debtor's counsel is aware it fails to meet the
4          requirements of Federal Rule of Bankruptcy Procedure 9011**.
           Notwithstanding tucking such arguments in the Declaration, Rule 9011
5          applies to the certifications may be the Debtor and counsel stated in the
           pleading filed with the court.

6          **Clearly, this legal argument is a losing one**. Debtor filed her case
7          under Chapter 13 on August 2, 2017. Dckt. 1. A Notice of Voluntary
           Conversion to Chapter 7 was filed August 30, 2019. Dckt. 29.

8

9  *Id.* at 6 (emphasis added).

10          There is much bad blood between the Debtor and Trustee in this case.
            The result of this has been the generation of significant administrative fees
11          in a Chapter 7 with relatively modest unsecured claims. **This appears to be
            driven in significant part by Debtor dictating to her counsel what will be
12          done**, what legal arguments will be made, and how the Debtor will not
            cooperate with the Trustee, nor will the Debtor turn over property of the
13          bankruptcy estate to the Trustee.

14          **The court repeats from an earlier hearing in the Chapter 13 case
            the issue of conversion, the simple conclusion to the Chapter 7 case if
15          prosecuted by the Debtor in good faith, even if the Trustee were as evil
            and unreasonable as Debtor portrays**:

16          There exists a very modest amount of claims and
17          administrative expenses in the Chapter 7 case (at least modest in light
            of the very valuable investments which Debtor states exists and
18          should  not be "sold" by the Chapter 7 Trustee). **A Debtor working
            in good faith with the Trustee could quickly identify the
19          investments to be liquidated, claims and expenses paid, and
            Chapter 7 case closed**. Then, all of the remaining property of the
20          bankruptcy estate would be abandoned back to the Debtor when the
            Chapter 7 case was closed.

21

22          **There would be no need to convert the case to one under
            Chapter 11 and incur $20,000 to $30,000** in Chapter 11 plan
23          confirmation and administration expenses - so long as the Debtor was
            working to prosecute her Chapter 7 case in good faith. To the extent
24          a trustee was attempting to act improperly and waste property of the
            bankruptcy estate by unnecessarily liquidating property of the
25          bankruptcy estate, the Debtor and/or the U.S. Trustee seeking relief
            from the court would quickly put an end to such "shenanigans" (as a
26          former law clerk for this court would say).

27  Case No. 19-20302, Civil Minutes, Dckt. 86.
    . . .
28          **Conspicuously absent is any word about what a Chapter 11 plan
            would be.** Commonly, a debtor seeking such a conversion would have filed

as an exhibit a draft of a good faith plan that shows how the debtor could prosecute a Chapter 11 case. This would diminish that the motion to convert is **merely a ploy for the Debtor to be put in control and plunder the bankruptcy estate.**

The court can see that Debtor wants to convert the case to be back in control of the Estate, to oust the Trustee and his counsel, **and to relieve "stress" of having to comply with federal Bankruptcy Law. But, there has been no attempt to demonstrate what a possible Chapter 11 case** would look like, whether a Chapter 11 case would be successful, or whether a Chapter 11 would make financial sense.

**At the hearing, Debtor's counsel was unable to articulate any possible Chapter 11 plan or why such plan would be superior to the payment of the $10,000 of undisputed claims and the prompt adjudication of any disputes concerning administrative fees in the Chapter 7 case.** Debtor's counsel could not address why such prompt resolution could not include an initial abandonment of assets from the estate while the Debtor's desire to litigate the administrative expenses was not conducted, affording Debtor to almost immediately (in the next 30 days) **obtain the legitimate use of the surplus of the bankruptcy estate, rather than waiting six months to a year to do so through a confirmed and performed Chapter 11 plan.**

. . .

**Equally unpersuasive were the arguments of Debtor's counsel that, in his opinion, the standard provisions of a deed of trust in California nullify federal law as enacted by Congress** in 11 U.S.C. § 363(c)(2) expressly prohibiting the use of cash collateral unless either ordered by the court or consent under 11 U.S.C. § 363(c)(2) is given by the creditor. Rather, Debtor's counsel's arguments would only further delay the conclusion of this bankruptcy case, raising serious federal law issues and disputes, fighting over theoretical, academic arguments of what might possibly be.

*Id.* at 7-9 (emphasis added).

Here, it appears that once again the Debtor has bullied her counsel into making unsupportable legal arguments, devoid of any legal authority when presented to the court. Rather, there were merely, "well I think . . ." assertions by Debtor's counsel.

**As the court made clear at the hearing, Debtor's conduct in this case has not been one of diligent, good faith prosecution. It as if every step she takes is to frustrate the administration of this case and foment litigation and otherwise unnecessary expense.** In some respects the Chapter 7 trustee has played into Debtor's hands by appearing to become paralyzed by the threats and demands of Debtor that she pipes through her counsel. This has led to not only a waste of time and money by the Debtor, Trustee, and the Bankruptcy Estate, but waste of the court's time and resources.

*Id.* at 9 (emphasis added).

While complaining about all the delay, it is clear that if the Debtor was acting in good faith,

and Debtor's counsel was serving in that role in good faith and complying with the certifications made pursuant to Federal Rule of Bankruptcy Procedure 9011(b), this case would have been concluded in 2017 and Debtor would have enjoyed all of her more than $1,000,000.00 of assets which she has fought so hard over 2017, 2018, and now 2019 to keep from turning over to the Trustee.

As we see from the eighty-two (82) pages of transcripts from the three First Meetings of Creditors that were required in this case, it is clear that Debtor and her counsel knew in the Fall of 2017 that all Debtor had to do is come with approximately $20,000.00 from the various liquid and less-liquid assets well in excess of $1,000,000.00 to get the Chapter 7 case concluded. It is also clear from Debtor's statements that she had no intention of turning over any of the property of the estate that she was controlling.

The Trustee Counsel's time was spent in having to represent and protect the interests and rights of the Bankruptcy Estate against Debtor's continuing failure to comply with the Bankruptcy Code.

The Motion for Trustee Counsel fees is supported by a detailed fee transaction report. Exhibit A, Dckt. 203. These fee records chronicle the work of Trustee Counsel for the now three years of this bankruptcy case. Though provided this level of detail, Debtor and Debtor's counsel fail to identify any specific tasks or amount as not being proper. Much as just dumping on the court eighty-two (82) pages of transcripts for the first, second, and third First Meeting of Creditors without referencing any specific portions, Debtor and Debtor's counsel ignore the evidence presented. Rather, Debtor's counsel merely parrots the Debtor's objection that the Trustee, using counsel to enforce the rights of the Bankruptcy Estate and fulfill his fiduciary duties, causes Debtor "stress."

## ALLOWED FEES, COSTS, AND EXPENSES

The court finds that the hourly rates are reasonable and that Trustee Counsel effectively used appropriate rates for the services provided. It is unfortunate when, due to the litigation strategy of a party, higher than normal administrative expenses are incurred and have to be paid from a surplus estate. But a litigious party failing to comply with the Bankruptcy Code cannot validly claim that reasonable and necessary fees incurred in enforcing the rights of this Bankruptcy Estate should not

28

1   be paid since the bankruptcy trustee should just have capitulated to Debtor's conduct.

2   **Allowed Fees**

3      First and Final Fees in the amount of $28,850.00 are approved pursuant to 11 U.S.C. § 330

4   and authorized to be paid by the Chapter 7 Trustee from the available funds of the Estate in a manner

5   consistent with the order of distribution in a Chapter 7 case.

6   **Allowed Costs & Expenses**

7      First and Final Costs in the amount of $1,794.13 are approved pursuant to 11 U.S.C. § 330

8   and authorized to be paid by the Chapter 7 Trustee from the available funds of the Estate in a manner

9   consistent with the order of distribution in a Chapter 7 case.

10      The court authorizes the Chapter 7 Trustee to pay the fees and costs allowed by the court.

11      This Memorandum Opinion and Decision and the oral record from the August 21, 2019

12   hearing on this motion constitutes the court's Findings of Fact and Conclusion.

13      The court shall issue a separate order granting relief as stated above.

14   **Dated:** November 08, 2019         **By the Court**

17                     *Ronald H. Sargis*

18                 **Ronald H. Sargis, Judge**
                    **United States Bankruptcy Court**

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| J. Russell Cunningham, Esq.<br>Nicholas L. Kohlmeyer, Esq.<br>1830 15th Street<br>Sacramento, CA 95811 | |